## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **BRIAR BUILDING HOUSTON LLC,** | § | **CASE NO. 18-32218** |
| | § | |
| **Debtor** | § | **CHAPTER 11** |
| _____ | § | |
| **GEORGE M LEE** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **ADVERSARY NO. 18-3281** |
| | § | |
| **BFDI, LLC,** *et al.*, | § | |
| **Defendants.** | § | |
| | § | |

### PLAINTIFF GEORGE M. LEE'S RESPONSE TO MOTION FOR CONTEMPT

TO THE HONORABLE EDUARDO V. RODRIGUEZ, U.S. BANKRUPTCY JUDGE

  Plaintiff George Lee ("Plaintiff") comes before this Court and hereby files this Plaintiff's Response to the Motion for Contempt (the "Motion for Contempt")[1] filed by Defendant Jetall Companies, Inc. ("Jetall") and Defendant Ali Choudhri ("Choudhri") (together the "Defendants"), and in support thereof would show unto the Court as follows:

### I.  SUMMARY OF MOTION

  1.  Defendants' Motion for Contempt asks this Court to answer three fundamental questions. The first question is did this Court's May 22, 2018 order dismissing the core bankruptcy proceeding and the January 27, 2020 order dismissing the present adversary proceeding contain language enjoining Plaintiff from filing lawsuits against Defendants over claims and real properties completely unrelated to the bankruptcy matter? Because Defendants requested, but did

---

[1] Dkt. No. 157, Motion for Contempt filed September 1, 2020, p. 3.

not receive, any injunctive language in these orders, the orders do not specifically enjoin Plaintiff's filing of completely unrelated lawsuits, which is a required predicate for a finding of civil contempt. This is consistent with the precedent established in *In re Hester*, 554 B.R. 143 (Bankr. N.D. Tex. 2016).

2.      The second question is does the scope of the release contained in Paragraph 27 of the May 11, 2018 Forbearance Agreement (the "Forbearance Agreement") apply only to the property and claims made the subject of the bankruptcy and adversary proceedings, or is it instead a "global release" extending to any and all claims Plaintiff could have filed against Defendants at all times prior, both known and unknown?  While Defendants treat this "general release" as axiomatic, their intentional exclusion of the words "to the extent that such offsets, defenses or claims may exist" from any of their pleadings substantially alters the legal interpretation of the release.  The cannons of contract interpretation in Texas, focusing on giving full effect to the intent of the parties, support the conclusion the release is limited to the events made the subject matter of the bankruptcy and adversary proceedings, only.

3.      The final question asks if the "fair grounds of doubt" standard articulated by the United States Supreme Court in *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019), held to apply to 11 U.S.C. § 105 discharge orders, also applies to the orders dismissing the bankruptcy and adversary proceedings in the case-at-bar? Plaintiff contends the "fair grounds of doubt" standard applies. Even if this Court holds the Forbearance Agreement does in fact serve as a general release, Plaintiff can demonstrate an objective, good-faith legal basis behind his belief that the language of the Forbearance Agreement does not apply to claims wholly unrelated to this bankruptcy proceeding.

4.      Any one of these three grounds would serve as an appropriate legal basis for denial of Defendants' Motion for Contempt. As demonstrated in detail below, all three apply.

## II.     FACTUAL BACKGROUND

### A.  The Core Bankruptcy Matter surrounding the Briar Hollow Property.

5.      The events leading up to Defendants' Motion began on April 30, 2018, when Briar Building Houston LLC initiated the Chapter 11 Bankruptcy Case identified as Cause No. 18-32218 in the United States District Court for the Southern District of Texas (the "Bankruptcy Matter").[2] Briar Building Houston, LLC's only asset was 50 Briar Hollow Lane, Houston, Texas 77027 (the "Briar Hollow Property"). The Briar Hollow Property was subject to a certain December 30, 2013 loan agreement, deed of trust, and promissory note collectively referred to by the parties as the "Loan Documents."[3] When the Bankruptcy Matter was filed, BDFI, LLC was the lender and holder of the Loan Documents.[4]

6.      The Bankruptcy Matter was resolved when George Lee, Briar Building Houston, LLC and BDFI, LLC entered the Forbearance Agreement purporting to settle all claims between the parties as related to both the Briar Hollow Property and the Loan Documents.[5] Defendants quote only a small portion of the release contained in the Forbearance Agreement.[6] The full language of Paragraph 27 is:

> 27. **Ratification: Release of Lender**.        [Plaintiff]      hereby ratifies, reaffirms, acknowledges, and agrees that the Loan Documents represent valid, enforceable and collective obligations of Barrower and Guarantor and that [Plaintiff] ha[s] no knowledge of any offsets, defenses or claims against Lender, or any of its subsidiaries, affiliates, officers, directors, employees, agents, attorneys, predecessors, successors or assigns whether asserted or unasserted, and neither of the [Plaintiff parties] will assert *claims for offset or otherwise assert any claims or defenses to the payment of the obligations under the Loan Documents. To the extent that*

---

[2] Dkt. No. 1, Case No. 18-32218 in the United States Bankruptcy Court for the Southern District of Texas.
[3] *See* Dkt. No. 157-4, May 11, 2018 Forbearance Agreement, ¶ 2. A copy of the Forbearance Agreement is attached hereto as Exhibit A.
[4] Exhibit A, ¶ 2.
[5] Exhibit A, ¶ 27.
[6] Dkt. No. 157, Motion for Contempt filed September 1, 2020, p. 3.

> ***such offsets, defenses or claims may exist,*** the [Plaintiff parties] and each of its or his respective successors, assigns, parents, subsidiaries, affiliates, predecessors, employees, agents, heirs and executors, as applicable (collectively the "Releasers") jointly and severally, release and forever discharge and release Lender, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, predecessors, successors and assigns, both present and former, including Jetall Companies, Inc. and Ali Choudhri (collectively the "Lender Affiliates") of and from any and all manner of actions, causes of action, suits, debts, controversies, damages, judgments, executions, claims and demands whatsoever, asserted or unasserted, in law or in equity, which Releasors ever had or now have against Lender and/or Lender Affiliates, including, without limitation, any previously exist claim or defense whether or not properly suspected, contemplated or anticipated. The term "Lender" as used herein shall include, but shall not be limited to, its present and former officers, directors, employees, agents and attorneys.[7]

7. This Court granted Briar Building Houston LLC's Motion to Dismiss the Bankruptcy Matter on May 22, 2018 (the "Bankruptcy Order" hereafter).[8] The Bankruptcy Order indicated that the Court, "having considered the [Motion to Dismiss] and the agreements (including the Forbearance Agreement) referenced in the [Motion to Dismiss]," found that the Bankruptcy Matter should be dismissed "for cause" and "based upon the terms of the Forbearance Agreement."[9] The Court retained jurisdiction to "adjudicate all matters arising from, or relating to, the interpretation, implementation, and/or enforcement of this Order,"[10] but did not contain language specifically ordering the parties to engage in or refrain from certain conduct.

---

[7] Exhibit A, ¶ 27, emphasis added.
[8] Dkt. No. 157-7, Order Granting Motion to Dismiss Case under 11 U.S.C. 1112(b), signed May 22, 2018, p. 1. A copy of this document is attached hereto as Exhibit B.
[9] Exhibit B, ¶ B.
[10] *Id.*, ¶ 2.

8.      That same day, the Court signed an Order Granting Debtor's Motion to Approve Compromise with BDFI, LLC, an order which "approved" the terms of the Forbearance Agreement.[11]

## B. The Adversary Matter and Adversary Order.

9.      After the Bankruptcy Matter concluded, a subsequent dispute arose between Plaintiff and Defendants Jetall, Choudhri, Brad Parker and BDFI, LLC related to, among other things, a foreclosure by BDFI, LLC on the Briar Hollow Property and a breach by Jetall of a management and leasing agreement for the Briar Hollow Property. This dispute became the subject of a lawsuit filed on August 3, 2018 and removed to this Court as Adversary No. 18-03281 (the "Adversary Matter") in the Bankruptcy Matter filed by Plaintiff against BDFI, LLC, Brad Parker, Choudhri, and Jetall. Though the Adversary Matter defendants filed counterclaims against Plaintiff, all of these counterclaims were dismissed with prejudice by summary judgment.[12]

10.      Plaintiff, after several months of litigation, subsequently moved to dismiss the Adversary Matter. Though they no longer had any affirmative claims, BDFI, LLC and Jetall filed a joint objection to Plaintiff's proposed final judgment, requesting that the Court include the following language:

> It is also ORDERED that Plaintiff George M. Lee is ENJOINED from (1) directly or indirectly filing a new or different lawsuit **with respect to the transactions and occurrences made the subject of this case in any other Court** and that any such case must be filed only in this Court and (2) directly or indirectly filing any notice of lis pendens regarding the property located at 50 Briar Hollow, Houston, Texas 77027.[13]

---

[11] Dkt. No. 157-6, Order Granting Debtor's Expedited Motion to Approve Compromise with BDFI, LLC, entered May 22, 2018, p. 1.  A copy of this order is attached hereto as Exhibit C.
[12] Dkt. No. 102, Order Granting Plaintiff George M. Lee's Traditional Motion for Summary Judgment, entered June 26, 2019.
[13] Dkt. No. 145-1, Defendants' Proposed Final Judgment filed January 26, 2020. A copy of this document is attached hereto as Exhibit D.

11. The Court heard Plaintiff's motion to dismiss on January 27, 2020. At that hearing, Jetall's counsel urged the Court to include the above injunctive language, requesting an injunction stating "no more case filings unless you come back to this court and the Court retains jurisdiction over this."[14] The Court disagreed, striking the injunctive language because the Adversary Matter defendants failed to move for a permanent injunction and had no affirmative relief pending before the Court.[15]

12. The Court then entered a final judgment on January 27, 2020 (the "Adversary Order") dismissing the Adversary Matter with prejudice. The Adversary Order confirmed both the Bankruptcy Order and the Order Granting Debtor's Motion to Approve Compromise with BDFI, LLC signed May 22, 2018. This Adversary Order also affirmed that the Forbearance Agreement was "valid, enforceable, and in full force and effect and the Court retains jurisdiction to enforce such order."[16]

**C. Plaintiff files the West Loop Petition over an unrelated July 1, 2017 default on the 1001 West Loop South Property.**

13. On July 1, 2014, prior to the events of the Bankruptcy Matter and in a completely unrelated transaction, Choudhri personally guaranteed a loan made by Plaintiff to 1001 West Loop, LP for the commercial real property located at 1001 West Loop South, Houston, Texas 77027 (the "West Loop Property"). 1001 West Loop, LP serviced the loan until on or about January 2017 when the loan went into default.[17]

---

[14] Dkt. No. 152, Transcript of January 27, 2020 Hearing, Adversary No. 18-03281, at 5:1-4. A copy of this transcript is attached hereto as Exhibit E.
[15] *Id.* at 8:9-11.
[16] Dkt. No. 149, Final Judgment in Adversary No. 18-03281, p. 2. A copy of this document is attached hereto as Exhibit F.
[17] Exhibit C, ¶ 5.

14.     On March 10, 2020, Plaintiff, in his individual capacity, filed an Original Petition, Request for Disclosure and Jury Demand (the "West Loop Petition") identified as Cause No. 2020-16175 in the 152nd Judicial District Court of Harris County, Texas, alleging Choudhri breached a personal guarantee on a defaulted loan made by Plaintiff for the West Loop Property (this action is generally referred to herein as the "West Loop Lawsuit").[18] The West Loop Petition raised allegations for unpaid debt, interest, and other penalties in a total amount of $4,219,951.30.

15.     The West Loop Lawsuit does not involve the Loan Documents and is completely unrelated to the Briar Hollow Property and the claims made the subject matter of the Adversary Matter, Bankruptcy Matter, and Forbearance Agreement.[19]

16.     On August 19, 2020, Choudhri filed a Notice of Removal, indicating the case was being removed to this Court pursuant to 28 U.S.C. § 1452.[20]

**D.  Plaintiff files the Rivercrest Petition over the unrelated 35 E. Rivercrest Property.**

17.     Prior to the events leading to the Bankruptcy Matter, on August 12, 2013, Choudhri personally guaranteed Jetall's performance under a commercial contract for deed for the real property located at 35 E. Rivercrest, Houston, Texas (the "Rivercrest Property").[21] After the contract for deed was modified on October 22, 2016, Jetall failed to meet its obligations under the same and went into default.[22]

18.     On March 30, 2020, Plaintiff, in his individual capacity, filed an Original Petition, Request for Disclosure and Jury Demand (the "Rivercrest Petition"), identified as Cause. No.

---

[18] Dkt. No. 157-10, Plaintiff George M. Lee's Original Petition, Request for Disclosure and Jury Demand filed March 10, 2020, p. 1. A copy of the Original Petition is attached hereto as Exhibit G.
[19] *See, generally,* Exhibit G.
[20] Dkt. No. 55-1 in Bankruptcy Case No. 18-32218, Notice of Removal filed August 19, 2020, ¶ 1.
[21] Dkt. No. 157-11, Original Petition, Request for Disclosure and Jury Demand filed March 20, 2020 in Cause. No. 2020-20053 in the 215th Judicial District Court of Harris County, Texas, ¶¶ 2-5. A copy of this document is attached hereto as Exhibit H.
[22] *Id.,* ¶ 5.

2020-20053 in the 215th Judicial District Court of Harris County, Texas asserting damages against Choudhri of $704,384.80 for breach of a guaranty contract (the "Rivercrest Lawsuit").[23] Much like the West Loop Lawsuit, the Rivercrest Lawsuit does not involve the Loan Documents and is completely unrelated to the Briar Hollow Property and the claims made the subject matter of the Adversary Matter, Forbearance Agreement, and Bankruptcy Matter.[24]

19.     On June 22, 2020, Choudhri and Jetall, a subsequent intervenor, filed their Original Answer and Counterclaims against Plaintiff (the "West Loop Answer"), asserting counterclaims against Plaintiff under Texas Property Code Chapter 5.001 *et seq*. The West Loop Answer included the assertion of an affirmative defense that Plaintiff "has waived any claims against Jetall and Choudhri."[25]

20.     On August 21, 2020, two months after the Rivercrest Answer, Defendants filed a Notice of Removal, removing the Rivercrest Lawsuit to this Court.

**E.  The Motion for Contempt.**

21.     Approximately one week later, on September 1, 2020, Defendants filed what can best be described as a prodigious Motion for Contempt in the Adversary Matter previously closed as a result of the Adversary Order.[26]

### III.     ARGUMENT AND AUTHORITIES

22.     The Fifth Circuit has established that, in a civil contempt proceeding, the party seeking an order of contempt need only establish: (1) that a court order was in effect; (2) that the order required certain conduct by the respondent; and (3) that the respondent failed to comply with

---

[23] *Id.*, ¶ 6.
[24] *See, generally,* Exhibit H.
[25] Dkt. No. 56-4 in Bankruptcy Case No. 18-32218, Defendant Ali Choudhri and Intervenor Jetall Companies, Inc's Original Answer and Counterclaims filed June 22, 2020, ¶¶ 7, 13.
[26] Dkt. No. 157, Motion for Contempt filed September 1, 2020, p. 1.

the court's order..." *F.D.I.C. v. LeGrand,* 43 F.3d 163, 170 (5th Cir. 1995); *see In re Bradley,* 588 F.3d 254, 264 (5th Cir. 2009). The purpose of a civil contempt order is to either coerce compliance with a court order or injunction, or to compensate for damages sustained as a result of the complained-of conduct violating the order. *See American Airlines, Inc. v. Allied Pilots Association*, 228 F.3d 574, 585 (5th Cir. 2000).

23.     The standard of proof in a civil contempt proceeding is clear and convincing evidence, that is the quantum of proof that leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question. *In re Senior Living Properties, L.L.C.,* 309 B.R. 223, 235 (Bankr. N.D. Tex. 2004).  Civil contempt orders generally exist to either compel or coerce obedience of a court order and/or to compensate parties for losses resulting from the respondent's non-compliance with a court order." *In re Gervin,* 337 B.R. 854, 858 (Bankr. W.D. Tex. 2005).

24.     The United States Supreme Court, in speaking on the purpose behind the "potent weapon" of civil contempt, states that courts have long imposed civil sanctions to "coerce the defendant into compliance" with an injunction or "compensate the complainant for losses" stemming from the defendant's noncompliance with an injunction. *United States v. Mine Workers*, 330 U.S. 258, 303-304 (1947).

25.     There are three separate legal grounds upon which the Court may properly deny Defendants' Motion for Contempt: (1) the Bankruptcy and Adversary Orders do not contain any prohibitive language precluding Plaintiff from filing additional lawsuits for matters wholly unrelated to the bankruptcy proceedings, with the present case being nearly identical to *In re Hester*, which Plaintiff contends controls disposition herein; (2) the full language of the Forbearance Agreement's release, noticeably  absent from Defendants' motion, indicates it is specifically related to the Loan Documents and Briar Hollow Property, not a global "general

9

release;" and (3) regardless of the forgoing, Plaintiff can demonstrate an objectively reasonable good-faith legal basis behind his belief that the Forbearance Agreement's release and this Court's orders did not preclude filing the West Loop and Rivercrest Lawsuits, and so the Motion for Contempt should be denied under the new rule established in *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019).

**A.    The Bankruptcy Order and Adversary Order do not contain an affirmative injunction or otherwise serve as a basis for a civil contempt order.**

26.    Civil contempt is only appropriate when the order allegedly breached by the nonmovant contains language ordering the party to do – or refrain from doing – certain conduct. *In re Senior Living,* 309 B.R. at 235. Generally speaking, a court's awareness and approval of a settlement agreement is insufficient to make the terms of the settlement agreement a part of the court's order. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 380-81 (1994).

27.    In other words, in order for a party to be in contempt of an order, that order must first require the parties actively take or specifically refrain from performing a given action.

    i.    *In re Hester holds that approval and incorporation of a settlement agreement in an order without injunctive language prohibiting the complained-of conduct in the order itself is insufficient to support a civil contempt finding for alleged violation of the agreement.*

28.    The case of *In re Hester*, 554 B.R. 143 (Bankr. N.D. Tex. 2016), which Defendants themselves cite to in their pleadings, provides an excellent illustration of this concept. In *Hester*, the Bankruptcy Court for the Wichita Falls Division Northern District of Texas entered a sale order which accepted, approved the terms of, and attached a sales agreement requiring transfer of ownership for a certain life insurance policy from the debtor to Great Southern Oil and Gas Co ("Great Southern") so long as Great Sothern paid the policy premiums and distributed the life insurance proceeds to the creditors of the bankruptcy estate following the debtor's death. *Id.* at

146. However, upon the debtor's death, Great Southern instead put in a claim for the full value of the policy and did not pay out to the creditors as required by the sales agreement. *Id.*

29.    The *Hester* estate's administrator filed a motion for sanctions against Great Southern for their alleged failure to pay the estate creditors from the proceeds of the life insurance, as was required under the terms of the sales agreement approved by the bankruptcy court. *Id.* The *Hester* court disagreed, refusing to impose sanctions despite this ostensibly blatant violation of the terms of the sale order because it "did not specifically order Great Southern to do or refrain from acting." *Id.* at 149. Though the sale order incorporated the language of the settlement agreement requiring the transfer of proceeds, the sale order itself "did not require Great Southern to transfer the [insurance proceeds] to the [bankruptcy administrator]…" *Id.* Because the *Hester* order did not contain a requirement that Great Southern perform or refrain from performing a specific act, the *Hester* court held that the facts did not clearly and convincingly support a finding of civil contempt. *Id.*

ii.    *Like in Hester, the Bankruptcy Order and Adversary Order lack the injunctive language required for a civil contempt finding, though Defendants attempted and failed to include such language.*

30.    The circumstances of the present case are remarkably similar to that contained in *Hester*. Like the sale order in *Hester*, the Bankruptcy Order authorized the parties to execute and approved the Forbearance Agreement, stating that the "compromise with BDFI, LLC, as set out in the [Forbearance Agreement] is hereby approved."[27] *Id.* at 146. The Forbearance Agreement was approved and incorporated into the Bankruptcy Order using nearly identical language, and like in *Hester,* it does **not** contain any specific language for the parties to do anything or refrain from

---

[27] Exhibit B, ¶ 2.

filing any further cases, let alone cases completely unrelated to the subject of the bankruptcy, against the Defendants.

31.     Similarly, the Adversary Order affirms the validity of the Forbearance Agreement but does not contain a corollary injunctive prohibition on the filing of further cases against the Defendants.[28]

32.     In fact, the Adversary Matter defendants specifically requested the very kind of injunctive prohibition which might have formed the basis for a contempt finding as related to the bankruptcy Adversary matter, asking for the inclusion of language enjoining Plaintiff from "(1) directly or indirectly filing a new lawsuit with respect to the transactions or occurrences made the subject of this case in any other Court and that any such case may only be filed in this Court…"[29] The Court properly denied the inclusion of this injunctive relief because all of the Adversary Matter defendants' affirmative relief was dismissed at summary judgment.[30] Even if the aforementioned language had been included, it would not have applied to the West Loop Lawsuit or the Rivercrest Lawsuit, two matters clearly unrelated to the transactions or occurrences made the subject of the Adversary Matter.

33.     In sum, the test for civil contempt requires, *inter alia*, that the order forming the basis for the contempt action either requires or prohibits certain conduct by the nonmovant, here Plaintiff. *LeGrand,* 43 F.3d at 170. The Bankruptcy Order and the Adversary Order do not contain any provision affirmatively prohibiting Plaintiff from filing the complained-of actions against Defendants. Because there is no order requiring or prohibiting certain conduct for Plaintiff to

---

[28] Exhibit F, p. 2.
[29] Exhibit D, p. 2.
[30] Exhibit E at 7:24; Dkt. No. 102, Order Granting Plaintiff George M. Lee's Traditional Motion for Summary Judgment, entered June 26, 2019.

violate, civil sanctions are inappropriate in the present matter, and the precedent set in *Hester* requires denial of the Motion for Contempt.

    iii.    *The cases Defendants cite to in support of their Motion for Contempt are inapposite because they involve subject matter jurisdiction questions, not civil contempt proceedings.*

34.    Defendants attempt to cite to several cases, including *Hospitality House, Inc. v. Gilbert,* 298 F.3d 424 (5th Cir. 2002) and *Kokkonen v. Guardian Life Insurance Co.,* 511 U.S. 375 (1994) for the proposition that each and every one of the terms of the Forbearance Agreement were somehow included within the orders, expressly made a part of orders, and serve as active and present temporary injunctions against the filing of any lawsuit against Defendants, even those wholly unrelated to the Bankruptcy Matter.[31] However, these cases are inapposite because each of these cases focused upon whether the federal court had **subject matter jurisdiction** to review claims related to the settlement agreements, not whether they were a valid basis for a civil contempt finding. *See, e.g., Gilbert*, 298 F.3d at 434 (dismissing review of a lawsuit related to a settlement agreement with the statement that because "…the district court does not have subject matter jurisdiction to enforce the Agreement based on that court's order dismissing the prior suit that gave rise to the Agreement"). Merely having subject matter jurisdiction to enforce a settlement agreement is not the same thing as an affirmative prohibition or command required under the test for civil contempt.

35.    Indeed, the *Hester* court itself held that it had subject matter jurisdiction based on the court's authority to review the referenced and incorporated settlement agreement at issue in that case, but found that even the incorporation of the settlement agreement and retention of jurisdiction nonetheless "did not contain a requirement that Great Southern perform or refrain from

---

[31] Dkt. No. 157, Motion for Contempt filed September 1, 2020, p.10.

performing any specific act" for the purposes of civil contempt. *Hester*, 55 B.R. at 149. These cases simply do not stand for the proposition Defendants urge this Court to adopt.

36.     Even assuming, *arguendo*, that Defendants are correct that the final orders incorporated the entirety of the Forbearance Agreement's language, **the Forbearance Agreement still does not contain an affirmative prohibition on the filing of any further, unrelated suits against Defendants**. This alone takes all wind from the overwhelming majority of Defendants' arguments.

**B.     The Forbearance Agreement's full language, not just the excerpt quoted by Defendant, shows that it quite simply does not apply to the West Loop Lawsuit and Rivercrest Lawsuit.**

37.     There is, however, one important distinction between the present case and the facts present in *Hester*. In *Hester*, it was clear that Great Southern was in breach of the underlying sales order by failing to make the transfer contemplated in that order. *Hester*, 554 B.R. at 146. Here, in contrast, Plaintiff's conduct – to wit, filing lawsuits against Choudhri for completely unrelated claims over completely different properties than were at the heart of the Bankruptcy Matter – does not fall under the language of the Forbearance Agreement release. These unrelated claims involving unrelated properties are not within the scope of the Forbearance Agreement release.

*i.     Texas state law regarding contact interpretation focuses upon the intent of the parties and harmonizing all provisions of the document together to ascertain the document's meaning.*

38.     When interpreting contracts, federal courts generally are required to use the law of the forum state. *See Ballard v. Devon Energy Prod. Co.*, L.P., 678 F.3d 360, 366 (5th Cir. 2012). Here, as the forum state is Texas, Texas contract law applies when interpreting the meaning of the Forbearance Agreement.

39.     The cannons of contract interpretation in Texas mandate that, when construing a contract, the court's primary concern should be to "give effect to the written expressions of the parties' intent." *Forbau v. Aetna Life Ins. Co*, 876 S.W.2d 132, 133-134  (Tex. 1994) (*citing to Ideal Lease Serv., Inc. v. Amoco Prod. Co*., 662 S.W.2d 951, 953 (Tex.1983)). The reviewing court should consider the contract as a whole, reading all parts of a contract together to ascertain the intent of the parties contained therein. *Reilly v. Rangers Management, Inc*., 727 S.W.2d 527, 529 (Tex. 1987). Each part of a contract should be given effect. *See Barnett v. Aetna Life Ins. Co*., 723 S.W.2d 663, 666 (Tex.1987). The court should also "avoid a construction that is unreasonable, inequitable, and oppressive." *Frost Nat'l Bank v. L & F. Distribs., Ltd*., 165 S.W.3d 310, 312 (Tex. 2005) (per curiam).

ii.     *The context of the alleged "general release," when including the language intentionally omitted by Defendants, makes it clear the release relates only to the Briar Hollow Property, Bankruptcy Matter, Adversary Matter, and Loan Documents.*

40.     Defendants claim that the Forbearance Agreement, the contract subject to interpretation here, contains a "general release" "from all preexisting claims, debts, or other obligations" against Defendants.[32] Defendants take the existence of this "general release," and its applicability to Defendants, as something as clearly evident as "the sky is blue." But what are Defendants really claiming?

41.     The Forbearance Agreement begins by identifying the parties to the agreement as Briar Building Houston, LLC, Plaintiff, and BDFI, LLC.[33] It then discusses and defines the loan agreement, deed of trust, promissory note, and financing statement related to the Briar Hollow Property.[34] The Forbearance Agreement generally mandated that BDFI, LLC was to forbear on

---

[32] Dkt. No. 157, Motion for Contempt filed September 1, 2020, p. 1.
[33] Exhibit A, p. 1
[34] *Id*., ¶ 2.

foreclosing their interest on the Briar Hollow Property for approximately three months while Plaintiff attempted to sell the Briar Hollow Property.[35] The Forbearance Agreement also reserves the remedies of the lenders to foreclose on the Briar Hollow Property,[36] reaffirms the remaining provisions of the Loan Documents,[37] and discusses the marketing and maintenance of the Briar Hollow Property,[38] In short, each and every paragraph of the Forbearance Agreement clearly revolves around and is related to the parties' disagreements on the Briar Hollow Property and Loan Documents.

42.     And the alleged "general release" is no different. Paragraph 27 of the Forbearance Agreement states that Plaintiff "agrees that the Loan Documents represent valid, enforceable and collectible obligations…" and that Plaintiff has "no knowledge of any offsets, defenses or claims" against BDFI LLC or its subsidiaries and affiliates.[39] It then goes on to say in the very next sentence that "**To the extent that such offsets, defenses, or claims may exist,** [Plaintiff and affiliates]… release and forever discharge [BDFI, LLC]… including [Jetall] and [Choudhri]… from any and all manner of actions, causes of action, suits, debts, controversies… which [Plaintiff and affiliates] ever had or now have…"[40]

43.     This language, **which Defendants intentionally excluded from their Motion for Contempt**, shows that the "release and forever discharge language" directly references the claims, defenses, and offsets Plaintiff has **related to the validity and enforceability of the Loan Documents.** A reading of the entirety of Paragraph 27 of the Forbearance Agreement, particularly in conjunction with the context and the terms of the remainder of the document, show that the

---

[35] *Id.*, ¶ 3.
[36] *Id.*, ¶ 7.
[37] *Id.*, ¶¶'s 12, 28.
[38] *Id.*, ¶¶'s 36-37.
[39] *Id.*, ¶ 27.
[40] *Id.*, ¶ 27 (emphasis added).

parties intended the release to apply only to the Loan Documents and only as related to the Briar Hollow Property. To restate, the most reasonable interpretation of the whole of Paragraph 27 is to read it as related to and applying only within the context of the Loan Documents and the Briar Hollow Property, just like every other provision contained within the Forbearance Agreement.

44.     And it is equally clear Defendants understood the Forbearance Agreement's release only applied to the proceedings made the subject of the Bankruptcy Matter and Adversary Matter, as even their own proposed injunctive language, rejected by this Court, recognized that injunction against filing further lawsuits only applied "**with respect to the transactions and occurrences made the subject of this case**."[41] Defendants' own proposed language thus would not have applied to all possible transactions or occurrences, but rather only those at issue in the Bankruptcy Matter and Adversary Matter.

45.     Finally, to interpret the Forbearance Agreement as a general release of completely unrelated claims unreferenced within the four corners of the contract, or for that matter within the same paragraph as the "general release," would not only ignore the context of the release, but also result in an "unreasonable, inequitable" outcome unsupported by the overwhelming majority of the document's language. *L & F. Distribs*, 165 S.W.3d at 312.

**C.  There is at a minimum an objective and demonstrable "fair ground of doubt" regarding whether both the language of the orders and the release contained in the Forbearance Agreement prohibit Plaintiff from filing different lawsuits over completely unrelated properties and claims.**

46.     Regardless of how the Court holds on the two previously presented issues, Plaintiff contends that the new standard governing civil contempt orders as articulated in the United States Supreme Court case of *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019) governs resolution of the present case as well.

---

[41] Exhibit D, p. 2.

47.     *Taggart* involved a review of an award of civil sanctions under 11 U.S.C. § 105 against a creditor who violated a bankruptcy discharge order. *Id*. at 1801-02. At issue was whether objective or subjective intent of the creditor in violating the discharge order should be taken into account, or whether the violation itself was sufficient to find for civil contempt regardless of the creditor's intent or reasonable basis behind the violation.

48.     The Supreme Court rejected the "strict liability" test urged by the appellant, which did not take into account the subjective beliefs or reasonable basis of the creditor's conduct, as adopting it would "authorize civil contempt sanctions for a violation of a discharge order regardless of the creditor's subjective beliefs about the scope of the discharge order" or regardless of whether there was a reasonable basis for that violation. *Id.* at 1803. Rather, recognizing that discharge orders "are written in general terms and operate against a complex statutory background," and that there will "often be some doubt as to the scope of such orders," the proper standard was an objective one. *Id* at 1802, 1804.

49.     Recognizing that civil contempt is a "severe remedy," the United States Supreme Court indicated that civil contempt "should not be resorted to where there is [a] *fair ground of doubt* as to the wrongfulness of the defendant's conduct." *Id*. (quoting *California Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618 (1885). The United States Supreme Court thus held that:

> A court may hold a creditor in civil contempt for violating a discharge order **where there is not a "fair ground of doubt"** as to whether the creditor's conduct might be lawful under the discharge order. *Id.*

50.     Plaintiff contends that the very same reasoning in the *Taggart* decision should also be applied here. The Bankruptcy Order and Adversary Order are essentially discharge orders in that they employ general language that either disposes or dismisses of the underlying proceedings

18

entirely.[42] Both are written in general terms and do not contain specific prohibitions or injunctions (such as those requested by Defendants but not included in the orders).

51.     But most importantly, the *Taggart* holding recognizes the importance of objective intent in the context of equitable proceedings like civil contempt. And there are several objective "fair grounds of doubt" that are readily apparent here. The Forbearance Agreement approved by this Court dealt entirely with events surrounding the Briar Hollow Property.[43] The "general release" contained in Paragraph 27 of the Forbearance Agreement is limited to the Loan Documents and Briar Hollow Property by its own language. Indeed, it appeared at the final hearing in the Adversary Matter that Defendants' counsel was only concerned and sought an injunction against further filings in the Adversary Matter, as the proposed language of the stricken injunctive paragraph enjoined the filing of further lawsuits by Plaintiff "with respect to the transactions and occurrences made the subject of this case in any Court."[44]

52.     Given the forgoing objective indicia as to the limited scope of the Forbearance Agreement and orders in the bankruptcy and adversary proceedings, Plaintiff reasonably believed that he was precluded from filing any further claims against Defendants as related to the Briar Hollow Property.[45] Plaintiff did not file a subsequent lawsuit over the Briar Hollow Property or BDFI's performance under the Forbearance Agreement as contemplated and feared by the Defendants at the final hearing in the Adversary Matter.[46] However, because the underlying circumstances of the Rivercrest Lawsuit and the West Loop Lawsuit are completely and wholly

---

[42] *See* Exhibit B; Exhibit F.

[43] *See* Exhibit A; Exhibit B.

[44] *See* Exhibit D, p. 2.

[45] Defendants point to George Lee's testimony that he understood the release to be a "general release" when cross-examined by counsel. Dkt. No. 157, p. 11. This is a red herring. "General release" is a legal term of art with a specific definition which a layman cannot be expected to know or fully understand the ramifications of. The same hearing transcript makes it clear Plaintiff understood that he was releasing all claims against Defendants and their various affiliates as related to the Briar Hollow Property.

[46] See Exhibit E at 4:18-19 "we've asked that if any further filings are to happen, that they come back to this Court."

unrelated to the Briar Hollow Property, Bankruptcy Matter, Adversary Matter, and Loan Documents, Plaintiff's belief that the release did not apply to these two new lawsuits was an objectively reasonable position.

53.     While Plaintiff contends that these positions are the legally correct interpretation of the various documents at play in this case, they at the very least form the foundation for a reasonable, good-faith, and objective belief, supported by the evidence, that the Forbearance Agreement simply does not apply to the Rivercrest and West Loop Lawsuits.

## IV.     <u>CONCLUSION</u>

54.     As illustrated above, the Motion for Contempt can and should be denied because the final orders do not contain the required prohibitive language, the full Forbearance Agreement shows the release therein only applies to the events surrounding the Bankruptcy Matter and Adversary Matter, and regardless Plaintiff has demonstrated an objectively reasonable "fair ground of doubt" behind why he contends the Forbearance Agreement does not apply to the West Loop or Rivercrest Lawsuits. Each, standing alone, would be sufficient to deny Defendants' Motion for Contempt. All three are present.

### Prayer

Therefore, for the forgoing reasons, Plaintiff, George Lee, respectfully prays that this Court: (i) deny Defendants' Motion for Contempt; and (ii) award Plaintiff any other relief to which he may be entitled to at law or in equity.

Dated: September 22, 2020          **SPONSEL MILLER GREENBERG PLLC**

                                    <u>*/s/ Thane Tyler Sponsel III*</u>
                                    Thane Tyler Sponsel III
                                    Attorney-In-Charge
                                    Federal Bar No. 690068/Texas State Bar No. 24056361
                                    Roger B. Greenberg
                                    Federal Bar No. 3932/Texas State Bar No. 08390000

Zachary A. Clark
Federal Bar No. 3087665/Texas State Bar No. 24097502
Allen Landon
Federal Bar No. 3028753/ Texas State Bar No. 24091870
50 Briar Hollow Ln., Suite 370 West
Houston, Texas 77027
Telephone: (713) 892-5400
Fax: (713) 892-5401
Email: sponsel@smglawgroup.com
Email: roger@smglawgroup.com
Email: zachary.clark@smglawgroup.com
Email: allen.landon@smglawgroup.com
Email: zachary.clark@smglawgroup.com
***Counsel for George M. Lee***

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2020 I caused the foregoing *George M. Lee's Motion to Remand* to be electronically field with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List as listed below:

GOLD, WEEMS, BRUSER, SUES & RUNDELL
Evelyn I. Breithaupt (TBN: 24073951)
2001 MacArthur Drive
P.O. Box 6118
Alexandria, Louisiana 71307
Telephone: (318) 445-6471
Facsimile: (318) 445-6476
Email: ebreithaupt@goldweems.com

Via U.S. Mail:
GUBERNICK LAW P.L.L.C.
Benjamin Gubernick
10720 West Indian School Rd. Ste. 19 PMB12
Phoenix, AZ 85037
Telephone: 734-678-5169
Email: ben@gubernicklaw.com

*/s/ Thane Tyler Sponsel III*
Thane Tyler Sponsel III