**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| **BRIAR BUILDING HOUSTON, LLC,** | § | **CASE NO. 18-32218** |
| Debtor | § | **CHAPTER 11** |
| | § | |
| _____ | § | |
| | § | |
| **GEORGE M. LEE,** | § | |
| **Plaintiff** | § | |
| | § | |
| v. | § | **ADVERSARY NO. 18-3281** |
| | § | |
| **BDFI, LLC,** *et al.*, | § | |
| **Defendants** | § | |
| | § | |

## DEFENDANTS JETALL COMPANIES, INC. AND ALI CHOUDHRI'S REPLY IN SUPPORT OF MOTION FOR CONTEMPT

Defendants Jetall Companies, Inc. ("Jetall") and Ali Choudhri ("Choudhri") (collectively, "Defendants") file this reply ("Reply") to Plaintiff George M. Lee's ("Plaintiff" or "Lee") "Response to Motion for Contempt" (Dkt. No. 166, the "Response" or "Def. Rep."). For the following reasons, the arguments raised in the Response lack merit, and Defendants' Motion for Contempt (Dkt. No. 157, the "Motion" or "Def. Mot.") should be granted.

### INTRODUCTION

On August 20, 2020, Lee petitioned a state court judge to invalidate this Court's orders on the grounds that they were "obtained by fraud." Supplemental Petition, Dkt. No. 157-15, at 1. Lee also filed in the state court case a ***sworn affidavit*** (the "Lee Affidavit") in which Lee asserted that he had been "fraudulently induce[d]" to sign the Forbearance Agreement after it had been "surreptitiously, unilaterally changed from the agreed language." Dkt. No. 157-14, at ¶ 3.

1

The Motion raised two principal grounds for holding Plaintiff in contempt: (1) Plaintiff's habitual filing of lawsuits based on claims he released in this Court; and (2) Plaintiff's collateral attack on the Forbearance Agreement. The Response, throughout its 21 pages of arguments, offers a litany of unavailing excuses related to the first issue, and fails to even mention the second, far more serious issue. That is because no legally cognizable excuses exist.

This Court should, therefore, grant the Motion and enter an order: (1) holding Plaintiff in contempt; (2) permanently enjoining him from pursuing any released claim against any released person or entity; (3) awarding Defendants actual damages and attorneys' fees in an amount according to proof; and (4) requiring Plaintiff to pay a coercive sanction to the Court in an amount sufficient to ensure future compliance.

ARGUMENT & ANALYSIS

## I.     Plaintiff's Response Utterly Fails to Address the Supplemental Petition.

"[T]he party seeking an order of contempt need only establish (1) that a court order was in effect, and (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order." *F.D.I.C. v. LeGrand*, 43 F.3d 163, 170 (5th Cir. 1995). As discussed in the Motion, Lee committed civil contempt when he "disregarded this Court's express retention of jurisdiction by petitioning a state court to invalidate the Final Judgment as 'ineffective and void.'" Motion at 12.

The Response not only makes no attempt to justify the Supplemental Petition[1] (attached to Motion as Gubernick Decl., Ex. 14, at 1, Dkt. No. 157-15). In fact, the Response <u>does not even mention the Supplemental Petition</u>. Plaintiff's 21-page Response puts forward numerous arguments concerning the interpretation of the Forbearance Agreement, and Lee's alleged good-

---

[1] Capitalized terms shall have the meaning set forth in the Motion, Dkt. No. 157.

2

faith belief that the Court's orders did not bar his state court lawsuits. However, these arguments are plainly inapposite to Plaintiff's most egregious conduct: filing a petition in state court that affirmatively sought an order declaring that the Forbearance Agreement was "obtained by fraud." Supplemental Petition, at ¶ 1.

As the Fifth Circuit has made clear, the proper route for seeking relief from this Court's orders is to file a motion to reconsider or an appeal—not to simply disobey the order and try to get another court to rule differently. *See Seven Arts Pictures, Inc. v. Jonesfilm*, 512 Fed. App'x 419, 422 (5th Cir. 2013) ("When a party violates a court order without objecting to it, asking the court to modify or vacate it, or even informing the court why it cannot or will not obey it, the court may hold the party in contempt without first deciding whether the disobedience was justified."). Accordingly, the Motion makes a prima facie case for civil contempt, and Plaintiff's failure to even address the issue—much less rebut it—ends the analysis. If Plaintiff had a valid argument for rescinding, revising, or reinterpreting the Forbearance Agreement—which he did not—he was required to bring that argument before this Court. Plaintiff has instead attempted to circumvent this Court's authority and cannot now pretend to raise only interpretive arguments about the Forbearance Agreement.

## II.    The Arguments Plaintiff Does Make Lack Merit.

The arguments Plaintiff does put forward amount to little more than revisionist history and warrant rejection.

### A.  The Court's Orders Barred Lee from Filing the State Court Cases.

Plaintiff contends that his conduct was not contemptuous because the Court's orders did not "contain a corollary injunctive prohibition on the filing of further cases against the Defendants." Response at ¶ 29. This argument fails because, unlike the settlement agreement in *In*

3

*re Hester*, 554 B.R. 143 (Bankr. N.D. Tex. 2016), the Forbearance Agreement was made part of the Court's orders, and the Court expressly retained jurisdiction to enforce it.

In *In re Hester*, an alleged contemnor acted in a way that was inconsistent with a letter agreement entered into between the parties. *See id.* at 148 (noting that "[i]t is clear to the Court that the Administrator could have sought damages for Great Southern's alleged conduct as a breach of contract cause of action in an adversary proceeding"). *In re Hester*, 554 B.R. 143, 148 (Bankr. N.D. Tex. 2016). However, the court held that civil contempt was not warranted because, unlike the letter agreement, the relevant court order "did not specifically order Great Southern to do or refrain from certain conduct." *Id.* at 149. The court reached this conclusion because: "the language in paragraph 7 of the Sale Order, in which the Court "accept[s] and approve[s]" the terms of the Letter Agreement … is insufficient to establish an order that the parties perform all the terms of the Letter Agreement." *Id.*

In the present matter, by contrast, the Court's Chapter 11 Dismissal Order was expressly predicated on it "being in the best interests [of the] creditors under 11 USC §§ 105 and 1112(b) and based on the terms of the Forbearance Agreement." Dkt. No. 157-6 at 1. The Court also ordered that "the parties are bound by the terms and conditions of the Forbearance Agreement. *Id.* Finally, Lee testified ***during a hearing on his motion for compromise approval*** that he was granting Defendants a general release in exchange for a forbearance. Dkt. No. 157-5, at 27:12-28:13.

Filing numerous cases seeking to collect on debts released by the Forbearance Agreement is, plainly, inconsistent with Lee's promises to the Court, and the orders entered by the Court. The Motion should be granted.

**B.  The Forbearance Agreement's General Release Is, in Fact, a General Release.**

Plaintiff next contends that the state court lawsuits "do[] not fall under the language of the Forbearance Agreement release." Response at ¶ 37. But that position flies in the face of the Forbearance Agreement's plain language and Lee's testimony.

In paragraph 27 of the Forbearance Agreement, Lee agreed that: (1) he "ha[d] no knowledge of any offsets, defenses or claims against [Defendants]"; (2) would not "assert claims for offset or otherwise assert any claims or defenses to the payment of the obligations under the Loan Documents"; and (3) "to the extent that such offsets, defenses or claims may exist," he waived them. Dkt. 157-3 at ¶ 27. In other words, the Forbearance Agreement did exactly what Lee said it did when he testified at the compromise approval hearing. It granted Defendants a general release.

In his Response, Plaintiff argues that "the 'release and forever discharge language' directly references the claims, defenses, and offsets Plaintiff has **related to the validity and enforceability of the Loan Documents**." Response at ¶ 43 (emphasis original). But that makes no sense. An offset, by definition, is ***unrelated*** to the validity and enforceability of the Loan Documents. Indeed, ***the existence of an offset presupposes the validity and enforceability of the claim it is offsetting***. *See, e.g.,* OFFSET, Black's Law Dictionary (11th ed. 2019) ("Something (such as an amount or claim) that balances or compensates for something else[.]").

Also unpersuasive is Plaintiff's naked assertion that "parties intended the release to apply only to the Loan Documents and only as related to the Briar Hollow Property." Response at ¶ 43. To the contrary, the release's scope was expansive. It encompassed:

> [A]ny and all manner of actions, causes of action, suits, debts, controversies, damages, judgments, exactions, claims and demands whatsoever, asserted or unasserted, in law or in equity, which [Lee] ever had or now ha[s] … including, without limitations any presently existing claim or defense whether or not presently suspected, contemplated or anticipated.

Dkt. 157-3 at ¶ 27. That language obviously encompasses the two state court cases. And it is, equally obviously, why Plaintiff moved a state court to invalidate the Forbearance Agreement as "obtained by fraud." Dkt. No. 157-15.

### C.  Plaintiff's Conduct Was Not Undertaken in Good Faith.

Finally, Plaintiff (through his counsel's unsworn statements) claimed he "belie[ved] that the release did not apply to these two new lawsuits" and that this belief was "objectively reasonable[.]" Response at ¶ 52.

But this argument is rebutted by Plaintiff himself. In the affidavit he filed in state court on August 10, 2020, Lee stated:

> I never had a clue that Choudhri or his company Jetall were claiming they had a general release from all their debt to me *until Choudhri made the claim of a general release of all debts at my February 11, 2020 deposition in a different case than this action for the first time*. In fact the assurances from Choudhri that he knew he and Jetall owed me and would pay indicated just the opposite and ratified the debts after the May 11, 2018 Agreement.

157-3 at ¶ 5. The February 11, 2020 date is crucial, given that *the West Loop and Rivercrest state court lawsuits were not filed until March 10 and March 30, 2020*, respectively. By Lee's own admission, at the time of filing the state court cases, Lee knew that Defendants believed they had a general release. Moreover, Lee's stated defense to the general release's applicability—that the parties had subsequently "ratified the debts"—is equitable in nature, and suggests that, at the time he filed the state court cases, *Lee himself believed the Forbearance Agreement contained a general release*.

The Response's claim that Lee's violation of the Court's orders was somehow a good-faith mistake is also flatly contradicted by the Supplemental Petition and Lee's own testimony before this Court.  Dkt. No. 157-5, at 27:12-28:13. When faced with a dispositive affirmative defense to his state court claims, Plaintiff did not petition this Court to modify the Forbearance Agreement.

Rather, he doubled down and demanded that the state court judge nullify the Court's orders as the products of fraud.

The inference is obvious: Lee believed that Defendants—or someone—duped him into signing the Forbearance Agreement, and that it was acceptable to forum shop for a state-court judge who would give him a do-over. Plaintiff should be held in contempt.

### CONCLUSION

It bears emphasis that the essential facts underlying Lee's most egregious misconduct—his collateral attack on this Court's orders—are not subject to serious dispute. Indeed, the Response does not even try to dispute them. Instead, the Response simply ignores them.

For the reasons set forth in the Motion and this Reply, Defendants respectfully request that the Court grant the relief requested in the Motion.

Respectfully submitted,

**GUBERNICK LAW P.L.L.C**.

By:  */s/ Benjamin Gubernick*
Benjamin Gubernick (admitted *pro hac vice*)
AZ Bar: 034599. CA Bar: 321883. NM Bar: 145006
ben@gubernicklaw.com
10720 West Indian School Rd., Ste 19, PMB 12
Phoenix, AZ 85037
Telephone: (734) 678-5169

**GOLD, WEEMS, BRUSER, SUES & RUNDELL**

By:  */s/ Evelyn I. Breithaupt*
Evelyn I. Breithaupt (Texas Bar No. 24073951)
ebreithaupt@goldweems.com
2001 MacArthur Drive
P.O. Box 6118
Alexandria, Louisiana 71307
Telephone: (318) 445-6471
Facsimile: (318) 445-6476

**ATTORNEYS FOR DEFENDANTS ALI CHOUDHRI, AND JETALL COMPANIES, INC.**

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a copy of the above and foregoing Motion for Contempt, has been sent to Thane Tyler Sponsel, III, counsel of record for the Plaintiff in this adversary proceeding, via the Court's ECF system, and via United States mail to the following address:

Allen B. Landon and Thane Tyler Sponsel, III
Sponsel Miller Greenberg PLLC
50 Briar Hollow Lane
Suite 370 West
Houston, TX 77027

and to Thomas L. Hunt, counsel for the Plaintiff in the state court proceedings, via United States mail to the following address:

Thomas L. Hunt
Thomas L. Hunt & Associates
4635 Southwest Fwy Suite 900,
Houston, TX 77027

Alexandria, Louisiana, this 16th day of October, 2020.

*/s/ Evelyn I. Breithaupt*
OF COUNSEL